IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**JOSEPH C. WHIGHAM,**

    **Plaintiff,**

    v.                                                  CIVIL NO. 2:11cv256

**CHASE AUTO FINANCE CORP.,**

    **Defendant.**

## OPINION AND ORDER

In the instant action, Plaintiff Joseph C. Whigham ("Plaintiff") seeks to sue Defendant Chase Auto Finance Corp. ("Defendant") for an alleged violation of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App. § 501 et seq. This matter is currently before the Court on a Motion to Dismiss filed by Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss.

### I. Factual and Procedural Background

#### A. Factual Allegations

As alleged in Plaintiff's May 9, 2011 Complaint, Plaintiff is and has been an active duty member of the United States Navy ("Navy") at all times relevant to this lawsuit. While on active duty, on April 6, 2007, Plaintiff purchased a new, blue 2007 Chevy Silverado truck ("Truck") from Bay Chevrolet in Norfolk, Virginia. As part of the sale, a financing contract ("Contract") was executed. This Contract was assigned by Bay Chevrolet to JP Morgan Chase Bank, and

subsequently assigned to Defendant. Compl. ¶¶ 5-6.

Plaintiff registered his Truck in Virginia and displayed a Department of Defense decal on the front windshield of the Truck. Plaintiff was deployed by the Navy in September 2007. While deployed, the temporary registration tags on Plaintiff's Truck expired. At some point in September 2007, Plaintiff's Truck was towed from overflow parking at Sewell's Point near Naval Station Norfolk where Plaintiff was storing it while he was away. When Plaintiff returned from deployment in November 2007, he learned that Defendant had been contacted by the towing company and had reclaimed the Truck. Plaintiff contacted Defendant, who told him that the Truck had been sold at auction. Plaintiff further alleges that despite being told by Defendant that he did not owe money on the Truck after its sale at auction, Imperial Credit Systems ("Imperial") subsequently initiated debt collection actions against Plaintiff in or around January 2010 for monies owed in connection with the Truck. Compl. ¶¶ 8-16.

**B. Procedural Background**

On May 9, 2011, Plaintiff filed a Class Complaint, on behalf of himself and "all similarly situated individuals," alleging that Defendant's repossession and sale of the Truck without a court order was in violation of the SCRA and had caused him monetary damages and emotional distress.[1] Compl. ¶ 17. Plaintiff's Complaint also contains an allegation of conversion under the SCRA, claiming that Defendant wrongfully exercised dominion and control over the truck by repossessing and selling it at auction without a court order. Compl. ¶ 44.

On June 22, 2011, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

---

1 This Court has original jurisdiction over the matter as the Complaint arises under the laws of the United States. 28 U.S.C. § 1331.

Plaintiff filed a timely Memorandum in Opposition to Defendant's Motion to Dismiss on July 5, 2011, and Defendant filed a timely Reply on July 11, 2011. The Motion is now ripe for judicial resolution.

## II. Standard of Review

### A. Rule 12(b)(6) Motion

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency a complaint, and the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although the court must take the facts in the light most favorable to the plaintiff, it need not accept the legal conclusions drawn from the facts. See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991). The court should deny a Motion to Dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." De Sole v. United States, 947 F.2d 1169, 1177 (4th Cir. 1991); see also Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 325 (4th Cir. 2001).

Federal Rule of Civil Procedure 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The facts upon which a complaint is based need not be set forth in detail. See Conley v. Gibson, 355 U.S. at 47. The Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), have clarified how the sufficiency of a complaint is to be evaluated under Rule 8. Under these cases, there are two essential requirements for a pleading:

3

that its allegations be sufficient and that its allegations be plausible.

In evaluating a complaint under Twombly and Iqbal, a district court must engage in a two-step process. First, the court must begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must decide whether the remaining allegations in the complaint—taken as true—state a "plausible claim for relief." Id. (quoting Twombly, 550 U.S. at 570). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to decide whether the facts "permit the court to infer more than the mere possibility of misconduct." Id. at 1950 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)). In essence, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

## B. Applicable Law

Plaintiff alleges a violation of the SCRA by Defendant by contending that Defendant was required to obtain a court order before selling Plaintiff's repossessed Truck at auction. The SCRA was first enacted in 1918 after the United States entered World War I as the Soldiers and Sailor's Civil Relief Act ("SSCRA"). See Soldiers and Sailors' Civil Relief Act, Pub. L. No. 65-103, 40 Stat. 440. Recognizing the need to provide civil protection for military servicemembers, Congress' original purpose in passing the SSCRA was to suspend proceedings and transactions during a soldier or sailor's absence so that he would have the opportunity upon returning from military service to be heard and to protect his interests. See H.R. Rep. No. 81,

108th Cong., 1st Sess. 32-33 (2003). Since 1918, the act has been updated and amended thirteen times, most recently in 2003 when Congress also renamed it the SCRA. Id. at 34.

In its current form the SCRA is designed to protect military servicemembers who devote their "entire energy to the defense needs of the Nation" by providing for the "temporary suspension of judicial and administrative proceedings and transactions that may adversely affect" their civil rights during their military service. 50 U.S.C. § 502(1)-(2). Title III of the SCRA provides protections for rent, installment contracts, mortgages, liens, assignments, leases, and telephone service. 50 U.S.C. §§ 531-538. At issue in this case are §§ 532 and 537 of Title III.

Plaintiff asserts his cause of action against Defendant under § 537 of the SCRA, which governs the enforcement of storage liens. This section, in relevant part, states:

§ 537. Enforcement of storage liens

(a) Liens.
   (1) Limitation on foreclosure or enforcement. A person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose any lien on such property or effects without a court order granted before foreclosure or enforcement.

   (2) Lien defined. For the purposes of paragraph (1), the "lien" includes a lien for storage, repair, or cleaning of the property or effects of a servicemember or a lien on such property or effects for any other reason.

Defendant argues that § 532, protection under installment contracts for purchase or lease, governs Plaintiff's claim. This section specifically provides the following:

§ 532. Protection under installment contracts for purchase or lease

(a) Protection upon breach of contract.
   (1) Protection after entering military service. After a servicemember enters military service, a contract by the servicemember for—

5

  (A) the purchase of real or personal property (including a motor vehicle); or
  (B) the lease or bailment of such property, may not be rescinded or terminated for a breach of terms of the contract occurring before or during that person's military service, nor may the property be repossessed for such breach without a court order.

(2) Applicability. This section applies only to a contract for which a deposit or installment has been paid by the servicemember before the servicemember enters military service.

## III. <u>Defendant's Motion to Dismiss</u>

### A. § 532 Governs This Claim

Defendant correctly argues that §532 of the SCRA governs the facts alleged in Plaintiff's Complaint. According to Plaintiff's Complaint, he entered into a financing contract, which was ultimately assigned to Defendant, when Plaintiff purchased his Truck. Compl. ¶ 6. Neither party contests whether this financing contract constitutes an installment contract. According to the financing contract signed by Plaintiff, he received $33,221.73 in financing and was obligated to make seventy-two monthly payments of $580.86 beginning on April 22, 2007. Pl.'s Ex. 1. Furthermore, neither party contests that Defendant was enforcing a lien when it sold Plaintiff's Truck at auction. See Def.'s Mot. Dismiss 11; Pl.'s Opp'n to Mot. Dismiss 5.

The parties differ, however, over whether § 532 or § 537 governs Defendant's lien on Plaintiff's Truck. Plaintiff asserts that the broad language of § 537(a)(2), which defines the term "lien" to include a "lien on such property or effects for any other reason," does not limit the section only to cover storage liens. Pl.'s Opp'n to Mot. Dismiss 6. This reading of § 537, however, ignores both the plain meaning and specific titles of the two sections of the SCRA—§ 532 governing installment contracts and § 537 governing storage liens. Furthermore, although the

Supreme Court has declared that the SSCRA (SCRA) is to be construed liberally, see Boone v. Lightner, 319 U.S. 561, 575 (1943), Plaintiff's interpretation of § 537 ignores established canons of statutory construction, namely that the specific controls the general and each word should be given effect.

1. The Specific Controls the General

In determining Congress's intent when interpreting a statute, a court should apply the "traditional tools of statutory construction." INS v. Cardoza-Fonseca, 480 U.S. 421, 446 (1987). Within these traditional tools, the "plain language of the statute in question is deemed the most reliable indicator of Congressional intent." Soliman v. Gonzalez, 419 F.3d 276, 281-82 (4th Cir. 2005). The plain text of the titles of §§ 532 and 537 of the SCRA indicate that Congress intended to have two separate sections to govern installment contracts and storage liens respectively. This reading of the plain language of the titles of §§ 532 and 537 is confirmed by examining the statutory language of the SCRA as a whole. Indeed, a court must construe each section of a statute "in harmony with every other part or section, because 'Act[s] of Congress ... should not be read as a series of unrelated and isolated provisions.'" Soliman, 419 F.3d at 282 (citing Gustafson v. Alloyd Corp., 513 U.S. 561, 570 (1995)).

In order to understand how broadly to interpret the definition of "lien" in § 537(a)(2), it is necessary to examine the phrase in context of the rest of the SCRA because "[w]e do not ... construe statutory phrases in isolation; we read statutes as a whole." Ayes v. U.S. Dept. of Veterans Affairs, 473 F.3d 104, 109 (4th Cir. 2006) (quoting United States v. Morton, 467 U.S. 822, 828 (1984)). Although the Supreme Court stated that Congress intended for each provision of the SSCRA (SCRA) to be interpreted separately, the Court simultaneously stated that it must

7

"follow the cardinal rule that a statute is to be read as a whole, since the meaning of the statutory language, plain or not, depends on the context." Conroy v. Aniskoff, 507 U.S. 511, 515-16 (1993). Indeed, it is a well-established rule of statutory construction that "statutes which are originally part of the same Act should be construed together." Alexander S. v. Boyd, 113 F.3d 1373, 1383-84 (4th Cir. 1997).

Examining the definition of "lien" in § 537(a)(2) in light of the rest of § 537(a) and the SCRA, the *ejusdem generis* canon of statutory construction is applicable. § 537(a)(2) specifically mentions liens for "storage, repair, or cleaning of the property or effects of a servicemember" followed by the general phrase "or a lien on such property or effects for any other reason." Under the interpretive principle of *ejusdem generis*, when "general words follow specific words in a statutory enumeration," a court construes the "general words to embrace only those objects similar in nature to those objects enumerated by the preceding specific words." United States v. Sturgis, 48 F.3d 784, 790 (4th Cir. 1995) (quoting 2A N. Singer, Sutherland Statutory Construction § 47.17 (4th ed. 1984)).

At issue in this case is the term "for any other reason" in § 537(a)(2). Plaintiff argues that this term encompasses all liens. However, applying *ejusdem generis* here, it is clear that the specific language must govern the more general language that follows it. Indeed, "for any other reason" should be read more restrictively to only encompass liens similar in nature to the ones specifically mentioned, namely liens for storage, repair, and cleaning. Enforcement of other types of liens are governed by other sections of the statute. Therefore, Congress did not intend for § 537 to govern a lien for an installment contract, which bears no resemblance to the specific liens mentioned.

8

### 2. Each Word Should Be Given Effect

Another canon of statutory construction—that each word should be given effect—is also applicable in the instant case. It is well-established that "courts should disfavor interpretations of statutes that render language superfluous." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992); see also Turner v. Rogers, 131 S. Ct. 2507, 2522 (2011) ("Ordinarily, we do not read a general provision to render a specific one superfluous."); Varity Corp. v. Howe, 516 U.S. 489, 522 (1996) (noting that, "of course, this result could be avoided simply by reading the statute as written and by respecting the canon that specific enactments trump general ones in carefully constructed statutes."). Indeed, the Fourth Circuit is "'loath' to read one statutory provision so as to render another provision of the same statute superfluous." Soliman v. Gonzalez, 419 F.3d 276, 283 (2005) (citing Cooper Indus. v. Aviall Serv., Inc., 543 U.S. 157 (2004); Norman J. Singer, Statutes and Statutory Construction § 46.06 (6th ed.2000)).

In this case, Plaintiff's expansive interpretation of a "lien...for any other reason" in § 537(a) would render different sections of the SCRA that govern other types of liens on a particularized basis superfluous because § 537 would govern all liens. The provisions of other sections of the SCRA governing different, specific types of liens, such as § 532 (installment contracts), § 533 (mortgages and deeds), § 535 (residential and motor leases), and § 561 (tax liens) would become meaningless. Plaintiff's reading would also eviscerate the plain meaning of the titles of each of these sections. Therefore, Plaintiff's interpretation of § 537 must fail. Congress explicitly created separate sections of the SCRA to govern the enforcement of different types of liens. Congress intended for § 532 to govern installment contracts, and since Defendant's lien arose out of an installment contract entered into by Plaintiff, § 532 governs Plaintiff's claim.

9

### B. Count I – Class Claim Violation of § 537 of the SCRA

Examining the SSCRA's provision on storage liens, formerly 50 U.S.C.A. App. § 532(2), the Fifth Circuit determined that "in order to fall within the Act, a lien must include charges for storage, but the lien need not be limited to such fees." United States v. Bomar, 8 F.3d 226, 228 (5th Cir. 1993). Although the language of the SSCRA differed from the current language of the SCRA in that the SSCRA read "any lien for storage" versus a lien "for any other reason" in the SCRA, the Court has already demonstrated that Congress intended for this section to only govern liens for storage, repair, and cleaning, and other similar liens. Therefore, Bomar is still useful for understanding the extent and application of § 537. Plaintiff's claim of a violation by Defendant of §537 of the SCRA governing storage liens fails because, under the facts alleged, Defendant did not hold a storage lien on Plaintiff's Truck. Defendant's involvement in this matter was limited to its sale of Plaintiff's Truck at auction pursuant to the lien it held under Plaintiff's installment contract for the Truck. The Complaint fails to allege or make any connection between the towing and storage of Plaintiff's Truck and its subsequent sale at auction. If Defendant had been responsible for the towing and storage of Plaintiff's Truck prior to selling it, perhaps Plaintiff would have had a valid claim. See, e.g., United States v. B.C. Enters., Inc., 667 F.Supp.2d 650 (E.D.V.A. 2009) (holding that the towing and storage of property by defendant constituted the enforcement of a storage lien on the property of a servicemember during a period of military service of that servicemember without a court order). However, based on the facts alleged in the Complaint, since Defendant's lien included no charges for storage and was based solely on the installment contract, Plaintiff fails to state a claim under § 537.

The facts alleged by Plaintiff also fail to state a claim under § 532 of the SCRA governing

installment contracts. § 532 protects servicemembers who purchase or lease a motor vehicle pursuant to an installment contract, which includes the financing contract alleged in Plaintiff's Complaint. Under this section, creditors may not repossess a motor vehicle without a court order if the contract for the purchase of the motor vehicle was entered into, and at least one installment payment was made, prior to the servicemember entering military service. See Donahou v. Presidential Limousine & Auto Sales, Inc., No. 06-6070, 2007 WL 1229342, at *1 (W.D. Ark. April 24, 2007) ("The SCRA only applies to contracts entered into before military service."). Importantly, § 532(a)(2) restricts the applicability of the section only to installment contracts "for which a deposit or installment has been paid by the servicemember before the servicemember enters military service."

At present, only one decision examining an installment contract lien holder's right to repossess a vehicle under the 2003 amendments to the SCRA has been published. In Donahou v. Presidential Limousine & Auto Sales, Inc., 2007 WL 1229342, at *1, the plaintiff purchased a truck from the defendant, an auto sales company, in June 2006 after he had enlisted in the military on January 18, 2006, as part of a delayed entry/enlistment program. However, because of this program, the plaintiff did not actually report for duty until August 14, 2006. Due to his military service, the plaintiff failed to make the payments on his installment contract, and the defendant subsequently repossessed the plaintiff's vehicle. Id. The Western District of Arkansas determined that the plaintiff's military service did not begin until he was required to report for duty. Since the plaintiff had purchased his truck before reporting for duty and entering into military service, the court held that § 532 protected the plaintiff.

An examination of the decisions of other courts which have interpreted the identical

11

provisions of § 532 of the SSCRA, the SCRA's predecessor, confirms this reading of the SCRA. See, e.g., Chas. H. Jenkins & Co. v. Lewis, 259 N.C. 86 (1963) (holding the SSCRA did not apply to a defendant who purchased an automobile and executed a conditional sales contract as security for payment of part of the purchase price thereon while he was in the military service); Twitchell v. Home Owners' Loan Corp., 59 Ariz. 22, 27 (1942) (interpreting a similar provision in the mortgage and trust section of the SSCRA, the court held that the Act "was meant to protect the interests of those who were called to the defense of their country and who, for that reason, were unable to keep up the payments upon obligations which they had incurred previous to their being called into service."). In Waldron v. Commercial Credit Corp., 5 Va. Cir. 450 (Va. Cir. Ct. 1974), the court interpreted a provision similar to § 532 in the SSCRA's section on waiving rights pursuant to a written agreement. In that case, similar to the one before the Court, the plaintiff purchased a car from a car dealer and agreed to make a down payment and pay the balance in monthly installments. Id. The car dealer later assigned the contract and lien to a commercial credit corporation. Id. After the plaintiff joined the military, the corporation agreed to modify the payment terms. Id. The plaintiff subsequently defaulted, and the Virginia Circuit Court held that the plaintiff was not protected by the SSCRA because the "Act expressly provides that the other provisions of the Act (including §§ 520 and 531...) shall not apply to the modification of a contract or to the repossession and sale of property which is security for an obligation pursuant to a written agreement of the parties, or their assigns, executed during or after the period of military service." Id. at 452.

The present case is very similar to these cases, and it is clearly distinguishable from the facts in Donahou because Plaintiff entered into his installment contract while he was on active

duty. The language of § 532 is clear, and it is reinforced by the court's holding in <u>Donahou</u>—"the SCRA only applies to contracts entered into before military service." 2007 WL 1229342 *1. In this case, according to Plaintiff, he entered into the installment contract for the Truck after he entered into military service. Compl. ¶¶ 5, 7. Indeed, Plaintiff alleges that he was, at all relevant times, a member of the United States Navy on active duty. Compl. ¶¶ 1, 31. Therefore, Plaintiff is not protected by § 532 of the SCRA for the installment contract he entered into and which was assigned to Defendant. Any other reading of the statute would deter businesses from entering into installment contracts with members of the armed services on active duty. Plaintiff fails to plead facts sufficient to demonstrate that the SCRA governs this claim and that Defendant violated the SCRA. Plaintiff's claim thus fails as a matter of law.

### C. Count II – Conversion Under the SCRA and State Law

In Virginia, the tort of conversion constitutes the "wrongful exercise or assumption of authority...over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." <u>PGI Inc. v. Rathe Prods., Inc.</u>, 265 Va. 334, 576 S.E.2d 438, 443 (Va. 2003) (internal quotation omitted). Absent the protections provided by the SCRA, Plaintiff makes no claim that Defendant's repossession and sale of the Truck at auction were otherwise unlawful under Virginia law. Indeed, the allegations concerning Plaintiff's conversion claim arise out of the same facts supporting his SCRA claim. <u>See</u> Compl. ¶¶ 43-47. Since neither § 532 nor § 537 of the SCRA protects Plaintiff under the facts alleged, and since Plaintiff has not pleaded facts sufficient to state a common law claim of conversion against Defendant, Plaintiff has failed to sufficiently allege a wrongful exercise or assumption of authority over his property.

13

IV. Conclusion

For the reasons set forth above, the Court hereby **GRANTS** Defendant's Motion to Dismiss with respect to Counts I and II of Plaintiff's Complaint. Accordingly, Plaintiff's Complaint is hereby **DISMISSED** with prejudice.

The Clerk is **DIRECTED** to deliver a copy of this Opinion and Order to all Counsel of Record in this case.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

Norfolk, Virginia
October 5, 2011